PRESSED STEEL CAR CO. v. NIST.

SAME v. FOULDS et al.

(Circuit Court of Appeals, Third Circuit.  January 13, 1910.)

No. 1,208.

1. TRIAL (§ 295*)—INSTRUCTIONS—CONSTRUCTION.

A paragraph of the court's charge must be considered with what precedes and what follows it.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 703–717; Dec. Dig. § 295.*]

2. MASTER AND SERVANT (§ 291*)—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

Decedents, having been warned of the defective condition of a temporary steam pipe joint which they had constructed, informed their superior, who examined it at length, and while he went to inform the foreman an explosion of the joint occurred, by which decedents were killed. *Held* that, though such superior servant was not examined as to whether he left any suggestion for decedents to remain, it was not improbable that their return to the joint might be accounted for by the suggestion of their superior that they do so; and hence an instruction that plaintiffs claimed that decedents went there and were at the joint when it exploded under instruction or suggestion of one who had been sent to take care of the joint was not erroneous.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1136; Dec. Dig. § 291.*]

3. MASTER AND SERVANT (§§ 285, 289*)—INJURIES TO SERVANT.

In an action for the death of certain employés by the explosion of a steam pipe joint, evidence *held* to require submission to the jury of the questions how the injuries were inflicted, how threatening the danger, and whether decedents were negligent in voluntarily exposing themselves to a peril that was obvious or might result in injury.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. §§ 285, 289.*]

4. NEGLIGENCE (§ 136*) — CONTRIBUTORY NEGLIGENCE — QUESTION OF LAW OR FACT.

A trial judge cannot infer contributory negligence from disputed facts, but can only pronounce it as a matter of law, when the facts are plain and practically uncontroverted, and the inference cannot fairly be escaped.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 333–346; Dec. Dig. § 136.*]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

Actions by Annie B. Nist and by George M. Foulds and others against the Pressed Steel Car Company.  Judgment for plaintiffs in each case, and defendant brings error.  Affirmed.

W. S. Dalzell (Dalzell, Fisher & Hawkins, of counsel), for plaintiff in error.

Geo. C. Bradshaw and G. R. Speer, for defendants in error.

Before GRAY and LANNING, Circuit Judges, and J. B. McPHERSON, District Judge.

J. B. McPHERSON, District Judge.  These two cases were tried together in the Circuit Court and have been argued together before the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Circuit Court of Appeals. They depend upon identical facts and may therefore be disposed of in one opinion.

The actions are based upon the defendant's negligence in constructing improperly a joint in a line of pipe that was designed to carry steam at high pressure. Under this pressure the joint gave way, and as a result of the explosion the two workmen whose deaths are now in question lost their lives. The only controversy raised by these writs of error relates to the conduct of the decedents, and before the dispute can be properly understood a brief statement of the facts is necessary. The joint had been put in by the Car Company's men. Among them were Nist and Foulds; the former being an expert pipe fitter, and the latter his helper. The joint was known to be a makeshift. It was expected to carry the steam for a week, and at the end of that period a permanent device was to take its place. It was finished on Sunday, and appeared to work satisfactorily until Tuesday morning, when it was observed to be leaking. The pipes connected by the joint were in the boiler room, and Stafford, who was in charge of that room, immediately started to notify Vaughan, the foreman of the pipe fitters, so that the necessary steps to remedy the trouble might be taken without delay. Upon his road he met Nist and Foulds, who were then employed in another part of the plant, and remarked to them, in effect, that their job of last Sunday had not been well done. He then carried his report to Vaughan, and Vaughan sent Cochran, another pipe fitter, to examine the supposed defect and see what he could do with it. When Cochran and his helper reached the joint, he found Nist and Foulds already there. Stafford's remark had produced its natural result, and they had gone to see what was the matter with the job upon which they had been engaged a day or two before. In what they thus did they may, perhaps, have been volunteers. There is no evidence that they were ordered to make the examination; but they were apparently acting from a praiseworthy motive, whatever the legal character of the act may have been. It is needless, however, to inquire whether their presence was justified, for no harm was done at that time. Cochran, who may have had the right to ask for their help, if the discharge of his duty made such help either necessary or desirable, accepted their assistance without question, and among the four workmen some effort was made to tighten the joint; Nist applying the wrench. The attempt was not successful. The steam escaped more freely, rather than less; and in a few moments they all went away together—Cochran in order to report to Vaughan, and Nist and Foulds for some place, and with some purpose, that were not disclosed at the trial. Not long afterwards the joint exploded, filling the boiler room with steam; and when it became possible to examine the scene of the accident the dead bodies of Nist and Foulds were found somewhere in the room. How they came to be there does not appear from the testimony. We have the bare fact, unexplained, that they lost their lives near enough to the scene of the explosion to be exposed to its destructive effects.

Under these circumstances, the Car Company insists upon two assignments of error—one of them to the following sentence from the charge of the court:

"On the part of the plaintiffs, however, it is claimed that these men went there: that they made this joint; and that when the joint exploded they were actually working there under instructions, or at the suggestion of a man who had been sent there to take care of that joint."

This sentence, however, is taken out of its context, and when it is read with what precedes and what follows we regard it as unobjectionable. Indeed, even if it be taken by itself, we see no reason to criticise it. Cochran was examined at length, but he was not asked the question whether he had left any suggestion for Nist and Foulds, and under the circumstances it was certainly not improbable that if they returned to the joint their return might be accounted for as the plaintiffs claimed.

The company relies mainly upon the argument that the jury should have received binding directions in its favor, because Nist and Foulds were chargeable with contributory negligence. It is contended that they took an obvious and dangerous risk, and took it of their own volition, without order or suggestion from their superiors; that they abandoned a place of safety and exposed themselves to a danger that was evidently threatening; and, since this appeared without contradiction, the request for binding instructions should have been granted. In our opinion the argument assumes too much. As we have already indicated, it is largely a matter of conjecture how they came to be where their bodies were found. All that we know with certainty is that the explosion took place, that they were in the boiler house at the time, and that they were afterwards found dead. How near to the joint they were does not appear in the record, neither was it proved how they were killed, whether by wounds inflicted by pieces of the broken joint, or by the scalding effect of escaping steam. The principal evidence on the subject is the following extract from the testimony of one witness:

"Q. When you got to the boiler house, what did you find?
"A. Found nothing but a lot of steam blowing out, was all you could see.
"Q. Anybody coming out of the boiler house?
"A. Coming out, them that could get out, and doors there to let them out.
"Q. Did any of you men who were there try to get into the boiler house?
"A. We did try to get in, but it wasn't safe to go in.
"Q. Did you go in at all?
"A. We went in after the steam had got down so that we could get in.
"Q. Did you see Mr. Nist and Mr. Foulds immediately after this explosion?
"A. Seen them after the steam had let down so we could get inside to see anything at all; seen them lying side by side.
"Q. Did you see them in the boiler house, or after they were carried out?
"A. When they were inside there.
"(Defendant admits that these two men were killed as the result of this explosion.)"

In addition to this, one other witness testified as follows:

"Q. Where was that joint to which you refer?
"A. Why, it was right on the steam line. The joint was right on the steam line.
"Q. Where was it with reference to where Mr. Nist and Mr. Foulds were injured or killed?
"A. Where was it?
"Q. Yes?
"A. It was on the steam line, the joint was.

"Q. Are you speaking about the joint at which Mr. Nist was killed?
"A. Yes, sir.
"Q. You are?
"A. I am speaking of that joint."

But it does not appear from this incidental allusion whether the witness was testifying from his own knowledge or from what he had heard, and his answers therefore throw little if any light upon a point that cannot be considered unimportant. It may be that the situation of the bodies was so well known to counsel, the jury, and the court that the need of proving it definitely was overlooked by both sides. If this is the fact, it is a matter for regret; for we are necessarily confined to the record as we have it, and we might often go astray if we ventured to assume what is neither proved nor clearly to be inferred. Moreover, there was conflicting testimony on the point whether the leaking steam meant that the joint as a whole was in great danger, or whether it did not mean merely that the gasket (which is one part of the joint) might blow out. The latter occurrence, in the opinion of some of the witnesses, was not a very important matter, and was not likely to result in serious harm. Taking the whole situation as it was presented to the court below, we do not see how the defendant's prayer for binding instructions could have been properly granted. It was for the jury to say how the fatal injuries were inflicted, how threatening the danger was, and whether the decedents were negligent in voluntarily exposing themselves to a peril that was obvious and might result in much injury. A trial judge cannot infer contributory negligence from disputed facts. He can only pronounce upon it as a matter of law, when the facts are plain and practically uncontroverted, and the inferences cannot fairly be escaped.

In each case the judgment is affirmed.